# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RANDALL BOGATHY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNION PACIFIC RAILROAD, ) <br> ) <br> Defendant. ) <br> ) <br> ) | Case No. 17-cv-4290 <br><br> Judge Robert M. Dow, Jr. |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's motion to bar Plaintiff's proposed expert [59]. Defendant's motion is granted. This case is set for further status on February 5, 2020, at 9:00 a.m.

## I. Background

Plaintiff Randall Bogathy is a police officer who was employed by Defendant Union Pacific Railroad from October 2001 through June 2017. Beginning in 2012, Plaintiff was assigned to commuter operations at the Ogilvie Transportation Center ("OTC"). Plaintiff was a "special agent," which is a non-union position. During the last year of his employment, Plaintiff worked the 6:00 a.m. to 6:00 p.m. shift, and his duties included monitoring cameras, answering any emergency calls, and foot patrol around the facility. When not on foot patrol, Plaintiff worked in the special agent office. In February or early March 2017, Plaintiff was asked if he had feedback about where in the special agent office cameras should be installed. Plaintiff requested that a camera be installed to monitor the gun safe. [60-2] at 12-16. In late March 2017, Union Pacific installed two cameras in that office. One was directed at the gun safe in the office, and the other

was directed at the area where personnel from a private security firm, Gomez Security, were stationed. *Id*. at 15-18.

In early April 2017, Brian Jarrett received a tip alleging that Plaintiff was tampering with one of the cameras in the special agent office in order to take naps during his shift. Mr. Jarrett was the Regional Deputy Chief of the Northern Region, and Plaintiff's supervisors reported to him. The tip came from Special Agent David Gonzalez, one of Plaintiff's co-workers. On April 12, 2017, Mr. Jarrett and Dan Veschak, the lieutenant through whom the tip had come to Mr. Jarrett, attempted to view the video feed of the special agent office and noticed that one of the cameras was not working properly. They went to the office, where Plaintiff was on duty, and used a laptop to try to view the video feed. While in the office, Mr. Jarrett observed Plaintiff walk to a fuse box and place a fuse back in the box, at which point the camera began functioning again.

Mr. Jarrett asked Plaintiff about his actions at the fuse box. According to Defendant, Plaintiff initially claimed he was checking for a blown fuse, but then apologized for tampering with the fuses and said he did not want to be monitored at work. Plaintiff denies that he apologized or admitted to tampering with the fuses and claims that he immediately told Mr. Jarrett that he had turned off the camera. Mr. Jarrett placed Plaintiff on paid administrative leave, and subsequent investigation showed that the times of the camera outages corresponded to Plaintiff's work schedule (but not to any other employee's schedule). Plaintiff was terminated in June 2017 for tampering with company equipment and dishonesty. After he was suspended, but before he was terminated, Plaintiff filed a complaint with the Occupational Safety and Health Administration ("OSHA"), which claimed that Union Pacific had illegally recorded him, used unqualified employees to handle police dispatch communications, and retaliated against him for being a whistleblower. [17-1] at 4, 6.

Plaintiff later filed a complaint in this Court against Union Pacific over his termination, which was subsequently amended. The operative second amended complaint [17-1] consists of four claims: Retaliation under the Illinois Whistleblower Act (Counts I and II); Invasion of Privacy (Count III); and "Retaliatory discharge/Violation of Public Policy" (Count IV).

Plaintiff disclosed James Paoletti as an expert witness to opine on "the complaint and disciplinary process" that Union Pacific used and that resulted in Plaintiff's termination. [60-7] at 11-12; [60-6] at 7, 68-69. Mr. Paoletti is a retired police officer with 38 years of experience at the Chicago Police Department and 10 years of experience at the Village of Crete Police Department. On April 26, 2019, Defendant filed a motion to bar Plaintiff's proposed expert [59], which is now before the Court. Defendant argues that Mr. Paoletti's opinions should be excluded both because they do not meet the requirements of Federal Rule of Evidence 702 and also because Plaintiff failed to make all of the required disclosures under Federal Rule of Civil Procedure 26.

## II. Legal Standard

### A. *Expert Testimony*

Federal Rule of Evidence 702[1] and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), provide the legal framework for the admissibility of expert testimony. *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015). The purpose of the *Daubert* inquiry is to scrutinize proposed expert witness testimony to determine whether it has "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field" so as to be deemed reliable enough to present to a jury. *Lapsley v. Xtek, Inc.*,

---

[1] Federal Rule of Evidence 702 states: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or a determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

689 F.3d 802, 805 (7th Cir. 2012) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). Rule 702 requires the district court judge to act as a gatekeeper to ensure that admitted expert testimony is relevant, reliable, and has a factual basis. *Id.* at 809; see also *Daubert*, 509 U.S. at 589. The Seventh Circuit has stressed that "the key to the gate is not the ultimate correctness of the expert's conclusions. Instead, it is the soundness and care with which the expert arrived at her opinion[.]" *Textron*, 807 F.3d at 834 (citation and internal quotation marks omitted) (alteration in original).

To determine whether expert testimony is admissible, the district court must ascertain (1) whether the expert is qualified, (2) whether his methodology is scientifically reliable, and (3) whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). *Daubert* sets forth the following non-exhaustive factors for the district court to consider when assessing an expert's methodology: (1) whether the theory has been or is capable of being tested; (2) whether the theory has been subjected to peer review and publication; (3) the theory's known or potential rate of error; and (4) the theory's level of acceptance within the relevant community. *Daubert*, 509 U.S. at 593–94; see also *Bielskis*, 663 F.3d at 893. However, the test for reliability is flexible, and "the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co.*, 526 U.S. at 142; see also *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009) (noting that the Seventh Circuit "gives the [district] court great latitude in determining not only *how* to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable").

4

In addition, the touchstone of admissibility under Rule 702 is helpfulness to the jury. *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991) *amended on unrelated grounds,* 957 F.2d 301 (7th Cir. 1992). An expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion. *Id.* "An expert witness is not permitted to parrot what some lay person has told him and testify that he believes the person was being truthful." *Goldberg v. 401 N. Wabash Venture LLC*, 755 F.3d 456, 461 (7th Cir. 2014); see also *Benson*, 941 F.2d at 604 ("[T]he jury does not need an expert to tell it whom to believe, and the expert's 'stamp of approval' on a particular witness' testimony may unduly influence the jury.").

*B.     Required Disclosures*

Federal Rule of Civil Procedure 26(a)(2) governs disclosure of expert witnesses who may present expert evidence under Federal Rule of Evidence 702, 703, or 705. A party is required to disclose, among other things, the facts and data considered by the proposed expert witness in forming his opinions, and a list of all other cases in the previous four years in which he has testified as an expert at trial or by deposition. Fed. R. Civ. P. 12(a)(2)(B)(ii) and (iv), respectively.

A party is not permitted to use any undisclosed information as evidence at a trial. Fed. R. Civ. P. 37(c)(1). "This sanction is 'automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless.'" *Keach v. U.S. Trust Co.*, 419 F.3d 626, 639 (7th Cir. 2005) (quoting *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)). The Seventh Circuit has established a four-factor test for evaluating whether Rule 37 sanctions are warranted: (1) prejudice or surprise to party against whom evidence is offered; (2) ability of the party to cure the prejudice; (3) likelihood of disruption to the trial; (4) the proffering party's bad faith or willfulness in not disclosing evidence at an earlier date. *Caterpillar, Inc.,* 324

5

F.3d at 857. Not all four factors need be met; preclusion of the untimely or insufficiently disclosed evidence is "automatic and mandatory" where the violation is unjustified and harms the opposing party. *Finley v. Marathon Oil Co.,* 75 F.3d 1225, 1230 (7th Cir. 1996).

## III. Analysis

### A. Expert Testimony

Plaintiff disclosed James Paoletti as an expert witness to opine on "the complaint and disciplinary process" that Union Pacific used and that resulted in Plaintiff's termination. [60-7] at 11-12; [60-6] at 7, 68-69. Mr. Paoletti's opinions, as expressed in his report ([60-7] at 11-53), cover two primary topics: (1) the narrative of events that led to Plaintiff' termination and (2) the application of certain Illinois laws to Plaintiff. Neither meets the requirements of *Daubert* and Rule 702. The Court will address each topic in turn.

#### i. Plaintiff's Termination

##### a. Expert Qualification

To be admissible, an expert opinion must come from a witness who is qualified to give it. "An expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion; the opinion must be an *expert* opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert." *Benson,* 941 F.2d at 604, (citing *United States v. Lundy,* 809 F.2d 392, 395–96 (7th Cir. 1987)). In order to determine whether an expert is qualified to opine on a particular subject, the court should "compar[e] the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723 (7th Cir. 1999), *quoting Carroll v. Otis Elevator Co.*, 896 F.2d 201, 212 (7th Cir. 1990).

Plaintiff points out that a witness's experience may qualify him to give opinions under Rule 702 and argues that Mr. Paoletti's conclusions should be admissible on this basis. But the evidence before the Court shows that Mr. Paoletti's experience, though extensive, does not qualify him to testify to the opinions contained in his report. Mr. Paoletti has 48 years of experience working in city police departments. [60-6] at 49. During that time, he has held supervisory positions in police departments and had experience disciplining employees subject to collective bargaining agreements. All of the employees Mr. Paoletti supervised while working at the City of Chicago were subject to a collective bargaining agreement. [60-6] at 20-21. While Chief of Police for the Village of Crete, Mr. Paoletti was involved in the discipline of a single employee who was not subject to a collective bargaining agreement. [60-6] at 19. In his entire career, that was the only employee he disciplined who was not subject to a collective bargaining agreement (and that employee still had a right to appeal Mr. Paoletti's decision to a mayor).

By contrast, the subject of Mr. Paoletti's proposed expert opinions is the "complaint and discipline process" that Union Pacific used and that resulted in Plaintiff's termination. Union Pacific Railroad is a private employer that, unlike government employers, is not subject to the Due Process Clause of the Fourteenth Amendment. See, *e.g.*, *Shelley v. Kraemer*, 334 U.S. 1, 13, (1948) (the Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful"); *Vann v. Scott*, 467 F.2d 1235, 1240 (7th Cir. 1972) (noting that "the state, as an employer, does not have the same unfettered right to discharge employees as does a private employer"). Furthermore, unlike the police officers Mr. Paoletti has supervised, Union Pacifico's employees are not subject to a collective bargaining agreement. Mr. Paoletti does not have experience supervising or disciplining employees like Plaintiff at an employer like Union Pacific. In the face of obvious legal and practical differences between union and non-union

7

employees,[2] Plaintiff has failed to present sufficient evidence that Mr. Paoletti's experience with union employees in government entities translates to, or is even relevant to, a non-union, private-employer context. Mr. Paoletti's experience is not sufficiently matched to the subject of the purported expert opinions in his report, and such testimony is not admissible under Rule 702 and *Daubert.*

### b.     Methodology and Application to the Case

The Court must ensure that a proposed expert's methodology is "scientifically valid" (*Daubert*, 509 U.S. at 592–93) and that his conclusions are "based on sufficient facts or data" (Fed. R. Evid. 702(b)). The proposed opinions fail both requirements.

The closest that Mr. Paoletti's report or deposition comes to a description of a methodology is as follows: "I asked [Plaintiff's counsel] to provide me with any of the documents that he had received from Union Pacific that would give me insight as to the allegations and the department directives that supported those allegations and procedures, those kind of things. I tried to base my decision on the facts, what the department directives say is supposed to happen, the allegations that allegedly happened, the disciplinary history of the accused officer, his term with the agency." [60-6] at 23. It is also clear that Mr. Paoletti relied heavily on his personal judgment in coming to conclusions. For example, when asked to support his conclusion that Plaintiff felt the private security officers stationed at OTC were a threat to his own position, Mr. Paoletti responded, "I think, once again, having been involved in the police science for 48 years, I have a pretty good idea how a lot of policemen think and how they perceive themselves; and I think that part of the issue when they decided to put civilian security people there is they felt that their position there

---

[2] See, *e.g.*, *Brown v. U.S. Postal Service*, 459 U.S. 212, 220 (1983) ("[A] collective bargaining agreement is much more than traditional employment terminable at will. Rather, it is an agreement creating relationships and interests under the federal common law of labor policy.").

was diminished and possibly his assignment there as a whole may have been in jeopardy. It's a human reaction." [60-6] at 48-49. As another example, when asked to explain his interpretation of Plaintiff's actions, which appears on pages 16 and 17 of his report ([60-7] at 26-27), Plaintiff responded, "It is my interpretation—it is my opinion of what probably occurred at the time. It was based upon my own conclusions and experience." [60-6] at 50-51.

Plaintiff has not presented sufficient evidence that Mr. Paoletti used a reliable method or applied it to reliable facts and data. First, merely applying personal judgment (or substituting his own judgment for that of the Union Pacific employees who disciplined Plaintiff) is not a proper methodology. Mr. Paoletti's repeated reliance on his years of experience and personal thoughts[3] suggest that "he either had no method or could not describe one." *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 418 (7th Cir. 2005) (affirming exclusion of proffered expert testimony based on the witness's "expertise" rather than reliable principles or methods). Thus the Court cannot even begin to review the factors listed in *Daubert* or other indicia of reliability; there is no theory to be tested, or published or peer reviewed, nor is there an error rate or level of acceptance to assess. The use of personal judgment in place of a scientifically valid method renders the proposed opinions inadmissible. *Id.*

Second, the proposed expert's speculation about the thoughts, feelings, and motivations of witnesses is not sufficient or reliable facts and data on which to form expert opinions. In fact, the Seventh Circuit has said that district courts are to "reject any subjective belief or speculation" in proffered expert conclusions. *Trustees of Chicago Painters & Decorators Pension, Health & Welfare, & Deferred Sav. Plan Tr. Funds v. Royal Int'l Drywall & Decorating, Inc.*, 493 F.3d 782, 787 (7th Cir. 2007) (quoting *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 816 (7th Cir.

---

[3] *E.g.* "I think, once again, having been involved in the police science for 48 years, I have a pretty good idea how a lot of policemen think * * *." [60-6] at 48-49 (emphasis added).

2004). There is much of this kind of material to reject in Mr. Paoletti's conclusions. For example, Mr. Paoletti opined on Plaintiff's medical issues:

> "As [Plaintiff] disrobes to change his clothes or tend to his medical issues, he exposes his lower extremities which now show visual signs of the toll that his medical problems have had on his legs. It also exposes the bandages he must wear and having anyone else view this is a blow to his masculinity and makes him feel less virile. Thus he turns the cameras off to preserve his dignity and decides to keep his medical condition and internal feelings private, by not telling his employer."

[60-7] at 27. It is not clear where the factual assertions in the passage come from, as Mr. Paoletti neither spoke with Plaintiff regarding his medical issues ([60-6] at 59) nor reviewed his sealed deposition testimony regarding his medical issues ([60-6] at 48), nor listed any medical files as materials he relied on in the Rule 26(a) disclosures (see [60-7] at 3-4). Furthermore, Mr. Paoletti's claims about Plaintiff's feelings delve into Plaintiff's mind and are speculative. The Seventh Circuit has ruled that expert testimony may not "be based on subjective belief or speculation." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010). Plaintiff has not presented sufficient evidence that the proposed expert relied on facts and data—as opposed to personal opinion and speculation—to form conclusions. Nor did he apply a reliable method. For these reasons, the proposed testimony regarding the narrative of events that led to Plaintiff's termination fails to satisfy the requirements of *Daubert* and Rule 702 and is inadmissible.

<u>c.     Assist the Jury</u>

Rule 702 further requires that the evidence or testimony "assist the trier of fact to understand the evidence or to determine a fact in issue. *Daubert.*, 509 U.S. at 591. In fact, "[t]he touchstone of admissibility under Rule 702 is helpfulness to the jury." *Benson,* 941 F.2d at 604. But 'assisting the jury' cannot veer into 'doing the jury's job for it,' and evidence that invades a key function of the jury is not admissible. For the purposes of the instant motion, the relevant "critical function of the jury" is assessing witness credibility, (see *United States v. Hall*, 165 F.3d

1095, 1107 (7th Cir. 1999)), and the Seventh Circuit has repeatedly affirmed exclusion of expert opinions that usurp that function of the jury. *E.g.*, *United States v. Gallardo*, 497 F.3d 727, 733 (7th Cir. 2007) (affirming exclusion of proffered expert testimony regarding effect of drug abuse on memory in part because such testimony "would intrude upon the jury's role in assessing witness credibility"); *Goodwin v. MTD Prod., Inc*., 232 F.3d 600, 609 (7th Cir. 2000) (affirming exclusion of expert testimony because "an expert cannot testify as to credibility issues. Rather, credibility questions are within the province of the trier of fact, in this case a jury."). Expert witnesses are not allowed to "sort out possible conflicting testimony or to argue the implications of those inconsistencies," as making conclusions about what evidence to believe is a job for the jury and the jury alone. *Davis v. Duran,* 277 F.R.D. 362, 370 (N.D. Ill. 2011).

Mr. Paoletti's proposed expert opinions are full of credibility determinations. For example, he challenged Special Agent Gonzalez's statement to Lieutenant Veschak that Plaintiff said he had been turning off the camera in order to sleep. [60-7] at 30. Elaborating on his decision not to credit Special Agent Gonzalez's statements, Mr. Paoletti testified that Special Agent Gonzalez "is less that[sic] truthful when giving his deposition and as such his statements are viewed with caution" ([60-7] at 24), and "I don't find him a credible, honest individual" ([60-6] at 56)] and "[I] found too many discrepancies in [Gonzalez's] testimony to consider him credible and to base my decision on his comments." ([60-6] at 45-46). Mr. Paoletti also weighed testimony from Mr. Jarrett and Mr. Veschak against testimony from Plaintiff and concluded, contrary to Plaintiff's sworn deposition testimony, that Plaintiff initially lied about disabling the camera and then admitted that he had done so. [60-7] at 26; [60-6] at 47-48. Opinions about witnesses' credibility are not helpful to the trier of fact because they usurp its critical function of making credibility determinations. Mr. Paoletti's opinions on which statements should be believed are not the

appropriate subject of expert testimony and are not admissible. *Benson*, 941 F.2d at 604 ("the jury does not need an expert to tell it whom to believe"). Such testimony from the proposed expert fails the requirements of *Daubert* and Rule 702 and is not admissible.

In sum, Plaintiff does not offer sufficient evidence that the proposed expert used a reliable method, based conclusions on sufficient facts or data, or would offer conclusions that assist—rather than supplant—the trier of fact. Testimony from Plaintiff's expert would, at best, be his personal thoughts on the events at issue in the case, which risks turning into "a gratuitous interpretation of the factual record." *Cage v. City of Chicago*, 979 F. Supp. 2d 787, 834 (N.D. Ill. 2013) (citing *United States v. Hall,* 93 F.3d 1337, 1343 (7th Cir. 1996)). Such testimony does not meet the requirements of Rule 702 and *Daubert* and is not admissible.

    ii.    *Application of Illinois Law to Plaintiff*

Much of Mr. Paoletti's report quotes certain Illinois laws regarding law enforcement officers, claims that they may have applied to Plaintiff in his job with Union Pacific, and then asserts that Union Pacific violated these laws. See, *e.g.*, [60-7] at 32-35 and 50-51. This subject meets none of Rule 702's requirements. Mr. Paoletti is not a lawyer, judge, law professor, or other legal expert, and nothing in his background qualifies him to opine on issues of law. There is no explanation of the methodology he used to arrive at his conclusions of law, whether it is reliable, or how he applied it to the facts of this case. Finally, and most importantly, testimony on this jury will not help the jury in any way. Legal conclusions are not an appropriate subject for expert testimony. *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994) (meaning of applicable law "is not a question of fact, to be resolved by the jury after a battle of experts"); *Harbor Ins. Co. v. Cont'l Bank Corp.*, 922 F.2d 357, 366 (7th Cir. 1990) (finding that it was impermissible for insurance company's expert witness to testify about his legal research because

in doing so the judge tilted the balance of power toward the insurance company); *CDX Liquidating Tr. ex rel. CDX Liquidating Trusee v. Venrock Assocs.*, 411 B.R. 571, 585 (N.D. Ill. 2009) (noting that "under Rule 702, courts have consistently excluded experts who proffer testimony on the law governing the case"). "It is not for witnesses to instruct the jury as to applicable principles of law, but the judge." *Panter v. Marshall Field & Co.*, 646 F.2d 271, 294 (7th Cir. 1981) (quoting *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509-10 (2d Cir.), cert. denied, 434 U.S. 861 (1977)). Mr. Paoletti in fact concedes this point. At his deposition, when asked if he was offering an expert opinion on the applicability of Uniform Peace Officers' Disciplinary Act and the Railroad Police Act to Plaintiff, Mr. Paoletti said "No. That's why I say 'may,' because that's up to the attorneys to argue." [60-6] at 42. To the extent that Mr. Paoletti offers expert conclusions about the application of Illinois law, they fail to meet *Daubert* and Rule 702's requirements and are inadmissible.

B. **Required Disclosures**

Defendant argues that Plaintiff failed to make some of the required disclosures under Rule 26(a), and therefore Rule 37 requires striking some or all of Mr. Paoletti's expert opinions. Specifically, Plaintiff's disclosure under Rule 26(a)(2)(B)(ii) omitted some independent research, including a tour of OTC, and several depositions that Mr. Paoletti relied on in forming his conclusions. Defendant learned of the omissions at Mr. Paoletti's deposition. Furthermore, Plaintiff's disclosure under Rule 26(a)(2)(B)(v) asserted that he had testified as an expert in six cases over the previous four years, but at his deposition Mr. Paoletti said he had testified as an expert in between 12 and 20 cases during that period. Defendant argues that, under Rule 37, Plaintiff cannot show that its failure to disclose was justified or harmless, and therefore the exclusion is "automatic and mandatory." *Keach*, 419 F.3d at 639. Defendant also points out that

Plaintiff's response brief [61] does not address this point at all and argues that Plaintiff has therefore conceded the point.

While it does appear that Plaintiff has waived the argument,[4] because this Court resolves the motion on the merits of the Rule 702 and *Daubert* question, it need not address whether Plaintiff waived the point, or whether Rule 37 requires exclusion of non-disclosed material, or what specific facts and opinions would be excluded.

IV. **Conclusion**

For the reasons set forth above, Defendant's motion to bar Plaintiff's proposed expert is granted. This case is set for further status on February 5, 2020, at 9:00 a.m.

Date: January 24, 2020

_____
Robert M. Dow, Jr.
United States District Judge

---

[4] *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (noting that a "[f]ailure to respond to an argument * * * results in waiver" and a party's "silence" in response to an argument leads to the conclusion that a point is conceded); *United States v. Farris,* 532 F.3d 615, 619 (7th Cir. 2008) ("Farris failed to respond to the Government's argument in a Reply Brief, and accordingly, we find that Farris waived his sufficiency of the evidence challenge[.]").